# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**LETICIA MORALES,**

     **Plaintiff,**

**v.**                           **Case No.  8:10-cv-733-T-30TGW**

**ZENITH INSURANCE COMPANY,**

     **Defendant.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. 85), Plaintiff's Motion for Summary Judgment (Dkt. 97), and the respective responses thereto (Dkts. 112 and 109).  Upon reviewing the motions and responses, and being otherwise advised in the premises, the Court concludes that Defendant's Motion for Summary Judgment should be granted, and that Plaintiff's Motion for Summary Judgment should be denied, as stated herein.

### Background

Plaintiff originally brought this insurance law action for: (1) declaratory judgment; (2) breach of contract; and (3) common law bad faith.  The declaratory judgment cause of action has since been dismissed (*see* Dkt. 12).  The bad faith claim has been abated until the determination of the breach of contract claim, the validity of which is the subject of the parties' instant motions for summary judgment.

The breach of contract action now pending before the Court stems from a workplace accident that killed Santana Morales in 1997.  Specifically, Morales, working as a landscaper for Lawns Nursery & Irrigation Designs, Inc. ("Lawns"), was crushed to death by a palm tree that was unloaded from a flatbed trailer.

After the accident, Morales' Estate started receiving workers' compensation benefits from Zenith Insurance Company ("Zenith"), Lawns' workers' compensation insurance carrier.  On December 3, 1999, the Estate filed a wrongful death action against Lawns and LNI Designs, Inc. ("LNI")[1] in Hillsborough County Circuit Court.  The Estate claimed that Lawn and LNI's negligence resulted in Morales' death.  Zenith, under an express reservation of rights, retained attorney J. Gregory Giannuzzi to represent Lawns in the wrongful death action.

According to Zenith, Giannuzzi was unable to effectively communicate with Lawns which made it difficult to defend the suit and to respond to discovery requests.  Finding that he was unable to adequately represent his client, Giannuzzi made a motion to withdraw from the underlying state court action, which was granted.  The motion stated that Zenith "pulled coverage and a defense" under the Policy based on Lawns' lack of cooperation.

While the wrongful death suit was still ongoing, Zenith continued to pay workers' compensation benefits each month to the Estate until August 21, 2003, when Zenith payed a final lump sum payment in full settlement of the claim.  In all, the Estate was paid over

---

[1] LNI is a sister company of Lawns, which also provided landscaping and irrigation services.  Morales was not employed by LNI, and Zenith provided no policies of insurance to LNI.

$100,000 in benefits.  In the settlement, Mrs. Morales signed a general release, releasing Zenith and Lawns from liability, and expressly electing workers' compensation benefits as the Estate's sole remedy.  Nonetheless, the Estate continued to prosecute the wrongful death action in Circuit Court (it appears that the Circuit Court was not advised of Mrs. Morales' settlement of the workers' compensation claim and/or her express election of remedies).

As the wrongful death case proceeded, Lawns and LNI, now unrepresented by counsel, failed to litigate the case.  After the Estate filed a motion for sanctions against Lawns and LNI based upon their failure to respond to discovery requests and comply with Court orders, the Court, as a sanction, struck the Defendants' pleadings.  With liability uncontested, the case proceeded to a one day jury trial on the issue of damages.  After the jury returned a $9.525 million verdict for the Estate, the Estate sought to collect that judgment from Zenith by filing the instant action.  Plaintiff alleges that Zenith breached its insurance contract with Lawns by refusing to pay for the underlying tort judgment.

Zenith claims, among other things, that the Estate's claim is excluded by a workers' compensation policy exclusion, that the Estate lacks standing to bring a breach of contract claim, and that other defenses bar coverage.  Alternatively, Zenith argues that, even if it is liable, a $100,000 policy cap functions to limit its exposure.

Plaintiff argues that these various policy exclusions and defenses either do not apply, or are waived.  Notably, Plaintiff argues that Zenith cannot now assert any "coverage defense" to disclaim liability as Zenith allegedly failed to properly comply with the Florida Claims Administration Statute  ("CAS").  In addition, Plaintiff contends that, since Zenith

failed to defend the Estate on the merits in the underlying state court action, any defenses it might now seek to assert are waived. As a result, Plaintiff contends that Zenith is liable for the full judgment amount.

## Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## Discussion

### A.    Does the Workers' Compensation Policy Exclusion Preclude Coverage for the Underlying Tort Claim?

The insurance contract between Zenith and Lawns contained two relevant parts. Part I afforded Lawns coverage for workers' compensation claims. Part II afforded Lawns coverage for various other claims, essentially providing "gap-filler" coverage for claims falling outside of Florida workers' compensation law.[2] Both parties agree that: (1) Plaintiff now seeks to recover under Part II of the Policy; and (2) Part II contains an express exclusion which states that the insurance does not cover "any obligation imposed by a workers' compensation...law, or any similar law." The parties vigorously dispute whether the

---

[2]Plaintiff refers to these parts as Part A and Part B, respectively.

language of this exclusion functions to exclude coverage for Plaintiff's tort judgment. This Court concludes that the exclusion does bar coverage.

Workers' compensation laws effectuate a compromise between employers and employees in which employers pay prompt benefits to injured workers, regardless of fault, and employees in turn give up their common law rights to sue their employer in tort. Florida workers' compensation law embodies this comprise. *See, e.g., Florida Erection Servs, Inc., v. McDonald,* 395 So.2d 203, 209 (Fla 1st DCA 1981). Thus, while injured Florida employees are entitled to the rapid recovery of benefits, regardless of fault, the receipt of workers' compensation benefits is generally their exclusive remedy. *See, e.g., Grice v. Suwannee Lumber Manufacturing Co.,* 113 So.2d 742, 745 (Fla. 1st DCA 1959).

A notable exception to the exclusivity provision of Florida workers' compensation law is the "intentional tort" exception. Under Florida law, if an employee can show that the employer (or an agent of the employer): (1) intentionally injured the employee while on the job; and/or (2) engaged in conduct that was virtually certain to result in injury or death, then; (3) said employee may elect to institute a tort suit outside of the provisions of the Act. *See* FLA. STAT. § 440.11(1)(b). Importantly, the employer's liability for such an intentional tort, which is brought entirely outside of the protections of workers' compensation law, is not an obligation imposed by the Act.

If, on the other hand, an employee's injury was not caused by an intentional tort, then, as long as the employer has secured workers' compensation insurance, that employee's only recourse is to receive workers' compensation benefits**.** *See, e.g.,* FLA. STAT. § 440.11(1).

*Woodson v. Ivey,* 917 So.2d 993, 996 (Fla. 5th DCA 2005).  Moreover, the employer *must* pay such benefits.  *See, e.g.,* FLA. STAT. § 440.10.  As a result, all such injuries trigger employer obligations under Florida workers' compensation law.

Here, the underlying state Complaint (which was the basis for the underlying tort judgment) alleged only simple negligence.  Moreover, it failed to allege any facts that might take the case out of the exclusive remedy provisions of Florida law.  As a result, Morales' negligent tort suit for workplace injury was subject to the exclusivity provisions of the Act, thereby triggering an obligation on the part of Lawns to pay workers' compensation benefits for Morales' injuries.[3]  As the underlying negligence tort suit triggered an "obligation imposed by the Act," the workers' compensation exclusion functions to bar coverage in this case. Notably, any other construction would allow the Plaintiff to "double dip," and recover both workers' compensation benefits and damages in tort; such a construction would belie the policy behind Florida workers' compensation law.

Indeed, Courts that have considered the instant issue of whether an employee's negligence-based claims for workplace injuries are excluded by insurance policy provisions disclaiming liability for any "obligations imposed by the Act" have found that such exclusions function to bar coverage.  *See, e.g.,  XL Ins. Am., Inc. v. Ortiz,* 673 F.Supp.2d 1331, 1339, 1344-45 (S.D. Fla. 2009) (claim for workplace injury barred by an exclusion disclaiming liability for "any obligation of the insured under a workers' compensation...law,

---

[3] Which Zenith, Lawns' insurer, has already paid in full.

or any similar law," especially since Ortiz had already received substantial workers' compensation benefits); *Indian Harbor Ins. Co. v. Williams,* 998 S.2d 677, 678-79 (Fla. 4th DCA 2009) (exclusion virtually identical to the one in the instant case precluded coverage for negligence-based injuries alleged in employees' tort suits against their employer); *Florida Ins. Guar. Ass'n., Inc. v. Revoredo,* 698 So.2d 890, 891, 893 (Fla. 3d DCA 1997) (almost identical exclusion precluded coverage for tort suit wrongful death action brought after employee was injured in the course of employment); *Everest Nat. Ins. Co. v. Valley Flooring Specialties,* 2009 WL 1530169, at \*8-9 (E.D. Ca. 2009) (an exclusion for "any obligation imposed by a workers' compensation law" clearly means that where workers' compensation liability exists, there is no coverage under the employers' liability portion of the policy; any other construction would permit a dual recovery, which is contrary to the concept of employers' liability insurance); *Danielson v. Larsen Co.,* 197 Wis.2d 799, 809 (Ct. App. 1995) (holding a virtually identical exclusion to be unambiguous, and to clearly exclude coverage for injuries that trigger obligations under a workers' compensation law); *Quick v. Ronald Adams Contractor, Inc.,* 861 So.2d 278, 282 (La. App. 5 Cir. 2003) (same); *Compsource Oklahoma v. L&L Construction, Inc.,* 207 P.3d 415, 421 (Okla. Ct. App. Div. 3 2008) (clear intent of virtually identical exclusion was to cover employee injuries under Part One of the Policy, the workers' compensation part, but to exclude employee injuries from coverage under Part Two).

Despite the substantial above-quoted authority which would appear to hold otherwise, Plaintiff argues that the exclusion should not apply to the facts of this case as the wrongful

death judgment obtained in the tort suit was allegedly not "an obligation imposed by the Workers' Compensation Act."   As a result, Plaintiff argues that it should be able to "double dip" and to recover under Part II of the Policy in addition to the benefits that Plaintiff has already received under Part I.

In support of its argument, Plaintiff primarily relies upon *Wright v. Hartford Underwriters Ins. Co.,* 823 So.2d 241 (Fla. 4th DCA 2002).   In that case, an injured employee sued his employer for gross negligence, and then settled the claim after the employer's insurer refused to defend its insured.  *Id.* at 241.   The employee later sued the insurer, which argued that the affirmative defense of workers' compensation immunity precluded coverage.  *Id.* at 242.   The Court ruled for the employee, finding that the insurer had waived its affirmative defense by failing to defend its insured in the underlying action. *Id.* at 242-43.  In dicta, the Court remarked that a similar workers compensation policy exclusion to the one in the instant case also did not apply as the underlying tort suit was not "an obligation imposed by worker's [sic] compensation" law.  *Id.* at 243.

*Wright* fails to convince this Court that the workers' compensation exclusion is non-applicable, for a number of reasons.  First, the quoted language was dicta, not necessary to the actual decision rendered in the case.  Second, the claim asserted in the underlying state action was for *gross* negligence, not simple negligence.  *Id.* at 241.  Whether the conduct alleged in the complaint constituted intentional behavior or conduct virtually certain to result in injury or death (which would have taken the tort suit outside of the exclusivity provisions of workers' compensation law) seems not to have been determined.  Third, footnote 4 of the

opinion actually supports Zenith's position in this case. It stated: "Manifestly, the purpose of the workers compensation exclusion in part II was to omit coverage thereunder for claims already payable under part I." *Id.* At 243, n. 4. Fourth, to the extent that *Wright* suggests that a negligent tort suit brought by an injured employee fails to trigger an "obligation imposed by workers' compensation law," it goes against the great weight of authority cited earlier. Fifth, a recent case in this Court soundly rejected Plaintiff's interpretation of *Wright* and in doing so specifically criticized *Wright*'s dicta.

Specifically, in *Sinni v. Scottsdale Ins. Co.,* 676 F.Supp.2d 1319, 1331 (M.D. Fla. 2009), an injured employee brought an action against her employer's insurer seeking to recover damages sustained from a fall at work. *Id.* at 1321. The employee filed a workers' compensation claim, received benefits, and settled the claim for a final lump-sum payment. *Id.* at 1325. She subsequently filed a tort suit against her employer, and later obtained a judgment against her employer after the employer's insurer declined to defend its insured. *Id.* at 1322, 1327. In the employee's suit against the insurer to collect on the judgment, the insurer argued that the employee's claims were barred by a workers' compensation exclusion which stated that "this insurance does not apply to...Any obligation of the insured under a workers' compensation...law or any similar law." *Id.* at 1328, 1330. The Court rejected the employee's argument that the exclusion did not apply, and stated that to the extent that *Wright's* dicta stated otherwise, the Court was "firmly convinced that the Florida Supreme Court would not follow *Wright." Id.* at 1331-32. The *Sinni* Court also found other problems with *Wright,* noting, for instance, that it appeared that the *Wright* Court (the 4th DCA)

implicitly overruled the dicta in *Wright* in *Indian Harbor Ins. Co.,* 998 So.2d at 679 (Fla. 4th DCA 2009). *Id.* at 1332, n. 18. In short, Plaintiff makes essentially the same "*Wright* argument" that was very recently rejected by this Court. For the above reasons, *Wright* fails to convince this Court that the policy exclusion is inapplicable.

Another case relied on by the Plaintiff, *Reliance Nat'l Ins. Co. v. Vitale,* 183 F.Supp.2d 506, (D. Conn. 2011), also fails to support Plaintiff's position. In *Reliance,* the Court found that a workers' compensation exclusion similar to the one here did not function to exclude coverage for a tort claim because the Court found that the action was brought outside of the Workers' Compensation Act, and hence did not constitute an obligation imposed by the Act. *Id.* at 511 Importantly, the *Reliance* tort suit alleged that an employee was injured by the "willful, serious and intentional misconduct" of the employer; hence, the employee had a tort claim that could be properly brought outside of the Act in accordance with the "intentional injury" exception. *Id.* at 508, 511. As an employer's liability for an intentional tort does not trigger an "obligation imposed by the Act," the workers' compensation exclusion simply did not apply. In short, *Reliance* fails to support to Plaintiff's position, as do the remaining cases cited by Plaintiff.

**B.      Is Zenith Entitled to Raise the Workers' Compensation Policy Exclusion?**

As discussed in detail above, this Court has determined that the workers' compensation exclusion contained in the Policy is applicable and would function to exclude coverage for Plaintiff's negligence tort claim. Plaintiff, however, argues that Zenith cannot raise defenses to liability that it could have raised in the underlying tort action; moreover,

Plaintiff argues that Zenith's alleged failure to comply with the notice provisions of the Claims Administration Statute ("CAS") precludes Zenith from relying on any coverage defenses that it might otherwise have had. Thus, this Court must determine whether Zenith is entitled to rely on the workers' compensation policy exclusion.

> **(1)   Does Zenith's Failure to Defend Lawns in the Underlying Tort Action Bar Zenith from Relying on Policy Exclusions?**

In Florida, an insurer who wrongfully fails to defend its insured in an underlying tort action cannot generally raise any affirmative defenses to that action that it might have raised in the tort action itself. *See, e.g., Sinni v. Scottsdale Ins. Co.,* 676 F.Supp.2d 1319, 1332 (M.D. Fla. 2009) ("Having wrongfully failed to defend its insured, the insurer has waived any such defenses and the underlying tort obligation has been established"); *Wright v. Hartford Underwriters Ins. Co.,* 823 So.2d 241, 242 (Fla. 4th DCA 2002) (insurer was bound by the settlement and could not relitigate the issue of liability by raising any affirmative defenses that could have been raised in the civil action between insured and employee). Nonetheless, even if an insured wrongfully failed to defend its insured in an underlying action, Florida law is clear that it may still rely on policy *exclusions* when it is later sued for indemnification for an underlying judgment. As the *Sinni* Court stated, policy exclusions may be raised as defenses:

> even if these [policy exclusions] mirror defenses (e.g., workers' compensation immunity) that could have been raised to defend the tort claim itself. The labels attached to the defenses are irrelevant. One defense is contractual; the other sounds in tort...Because the parties' relationship is strictly contractual at the indemnification stage, neither the insured nor a [] plaintiff can re-write the policy to provide benefits for non-covered injuries that have simply been

cloaked in causes of action for which there superficially appears to be coverage.  *Sinni,* 676 F.Supp.2d at 1332.

Thus, the *Sinni* Court held that the insurer was entitled to rely on any relevant policy exclusions in order to disclaim coverage, notwithstanding the fact that it had failed to defend its insured in the underlying action.  *Id.*

The Court in *Spencer v. Assurance Co. of Am.,* 39 F.3d 1146 (11th Cir. 1994) reached the same result.  Specifically, in an indemnity action, an injured employee argued that the insurer was precluded from relying on policy exclusions to deny coverage because the insurer waived such defenses by failing to defend the insured in the underlying action.  *Id.* at 1148-49.  In rejecting this argument, the Court stated:

> Florida law clearly states that liability of an insurer depends upon whether the insured's claim is within the coverage of the policy.  This remains true even when the insurer has unjustifiably failed to defend its insured in the underlying action...A determination of coverage, therefore, is a condition to any recovery against an insurer.  *Id.* at 1149.

Here, the workers' compensation exclusion is a policy exclusion, *not an affirmative defense;* thus, the fact that Zenith failed to defend the underlying tort action does not prevent it from relying on the exclusion in order to disclaim coverage.  While Plaintiff cites various cases holding that an insurer waives otherwise available affirmative defenses by failing to defend its insured in an underlying action, Plaintiff fails to cite a single case holding that an insurer also waives available policy exclusions for failing to defend.  As a result, Zenith is not barred from relying on the workers' compensation exclusion in order to disclaim coverage by mere virtue of the fact that it failed to defend Lawns in the underlying action.

**(2)    Does Zenith's Alleged Failure to Comply with the CAS Preclude Zenith from Relying on the Workers' Compensation Exclusion?**

Under the CAS, an insurer who declines to defend its insured must comply with certain statutory notice requirements before denying coverage. FLA. STAT. § 627.426(2). If an insurer declines to defend its insured without complying with these notice requirements, it is barred from later asserting any "coverage defenses" that would preclude coverage. *See, e.g., Country Manors Ass'n v. Master Antenna Sys., Inc.,* 534 So.2d 1187, 1194 (Fla. 4th DCA 1988) (insurer who failed to comply with § 627.426(2) was precluded from denying coverage based on any "coverage defense.")

Nonetheless, failure to comply with the CAS only waives "coverage defenses," not all defenses to liability. *Id.* A "coverage defense" is a defense to coverage that otherwise would exist, such as an insured's breach of a condition of the policy. *AIU Ins. Co. v. Block Marina Inv., Inc.,* 544 So.2d 998, 1000 (Fla. 1989). Importantly where coverage does not exist in the first instance (because the claim does not fall within the policy, and/or is subject to an exclusion) non-compliance with the CAS does *not* function to "create or resurrect" coverage. *Id.; Ohio v. Cas.,* 2011 WL 3879512, at *9 (M.D. Fla. 2011). Thus, non-compliance with the CAS does not prevent an insurer from relying on a policy exclusion in order to disclaim coverage. As the Florida Supreme Court stated in *AIU:*

> [C]onstruing the term 'coverage defense' to include a disclaimer of liability based upon an express coverage exclusion has the effect of rewriting an insurance policy when section 627.426(2) is not complied with...Such a construction presents grave constitutional questions, the impairment of contracts and the taking of property without due process of law. Therefore, we hold that the term 'coverage defense' as used in Section 627.426(2), means a

defense to coverage that otherwise exists...However, [the insurer's] failure to comply with the requirements of the statute will not bar an insurer from disclaiming liability...where the coverage sought is expressly excluded or otherwise unavailable under the policy or under existing law. *AIU,* 544 So.2d at 1000.

In sum, *even if* Zenith failed to properly comply with the CAS, Zenith is not precluded from relying on any relevant policy exclusions in order to disclaim coverage.

## Conclusion

As the Court concludes that Zenith may rely on the workers' compensation exclusion contained in the policy, and that said exclusion functions to preclude coverage, this Court need not address the various other issues raised by the parties with respect to the breach of contract action.

As Plaintiff's sole remaining claim for common law bad faith looks to be premised on Plaintiff's belief that the insurance policy affords coverage for the underlying tort judgment, it appears that Defendant is also entitled to summary judgment on Plaintiff's bad faith claim in light of the Court's conclusion that no coverage exists.  However, since the parties did not explicitly address the common law bad faith claim in their motions (it has been abated pending the resolution of the breach of contract claim), the Court will provide Plaintiff with fourteen (14) days from the date of this Order to file a response, if Plaintiff so chooses, discussing why final summary judgment in favor of Defendant on all counts should

not be granted, *notwithstanding* the fact that this Court has concluded that the insurance contract does not afford coverage for the underlying tort judgment.[4]

It is therefore **ORDERED AND ADJUDGED** that:

1.      Defendant Zenith Insurance Company's Motion for Summary Judgment (Dkt. 85) is hereby granted as stated herein.

2.      Plaintiff Leticia Morales' Motion for Summary Judgment (Dkt. 97) is hereby denied as stated herein.

3.      Plaintiff Leticia Morales has fourteen (14) days from the date of this Order to file a response, if Plaintiff so chooses, discussing why final summary judgment in favor of Defendant on all counts should not be granted.  If Plaintiff does not file such a response within this time period, the Court will enter final summary judgment in favor of Defendant Zenith Insurance Company.

**DONE** and **ORDERED** in Tampa, Florida on January 17, 2012.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2010\10--cv-733.msj.wpd

---

[4]This Court will not entertain any further arguments purporting to show that Plaintiff should prevail on its breach of contract claim.